STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

Randall Jeffrey L.,
Petitioner Below, Petitioner

**FILED**

September 3, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **No. 12-1196** (Mercer County 11-C-93)

**Marvin Plumley, Warden,**
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Randall Jeffrey L.'s appeal, filed by counsel Paul R. Cassell, arises from the Circuit Court of Mercer County, which denied petitioner post-conviction habeas corpus relief by order entered on September 12, 2012.[1] Respondent Marvin Plumley, Warden, by counsel Benjamin F. Yancey III, filed a response.[2] Petitioner thereafter filed a reply. On appeal, petitioner argues that he received ineffective assistance from his first habeas corpus counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was convicted of various sexual offenses in 2000. His first petition for post-conviction habeas corpus relief was denied in 2002. The circuit court denied petitioner's second petition for post-conviction habeas corpus relief in 2012. Petitioner now appeals this order.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of

---

[1]Because the underlying criminal matter involves sensitive facts in which the minor victim was related to petitioner, we have redacted petitioner's last name to protect the victim's identity. *See State v. Edward Charles L.,* 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2]Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we have replaced the original respondent's name, Adrian Hoke, with Marvin Plumley, who is the present warden of Huttonsville Correctional Center where petitioner resides.

1

law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009). The following standard is applied to claims concerning ineffective assistance of counsel:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Petitioner raises the same arguments on appeal that he raised in circuit court. Petitioner argues that the circuit court erred in finding that his prior habeas counsel was not ineffective. Petitioner contends that his prior habeas counsel provided deficient performance by failing to assert four ways in which petitioner's trial counsel was ineffective: (1) trial counsel's failure to admit evidence concerning petitioner's scar and tattoo; (2) trial counsel's confusion of evidence concerning a custody battle over the victim, which petitioner asserts could have been a reason for the victim to lie about the alleged sexual abuse for which petitioner was convicted; (3) trial counsel's failure to request a cautionary instruction with regard to evidence concerning improper flight from the criminal trial; and (4) trial counsel's failure to admit evidence concerning petitioner's lack of lustful disposition towards children, petitioner's competency, an alleged breaking and entering at a church, and inadequate review of the *Losh* checklist.[3]

Upon our review of the record and the briefs on appeal, we find no error or abuse of discretion by the circuit court. All of the issues petitioner raises on appeal were issues addressed and discussed by the circuit court in its order denying petitioner post-conviction habeas corpus relief. Petitioner raises nothing new that support his arguments. Having reviewed the circuit court's "Order," entered on September 12, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's opinion letter and order to this memorandum decision.[4]

For the foregoing reasons, we affirm.

Affirmed.

---

[3]The checklist of grounds typically used in habeas corpus proceedings, commonly known as "the Losh list," originates from *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

[4]Consistent with the first footnote of this Memorandum Decision, we have redacted the circuit court's order to protect the victim's identification, using an initial for petitioner's last name and only initials to reference other family members.

**ISSUED:**  September 3, 2013


**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

COPY

12-1196

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

NOTED CIVIL DOCKET
SEP 12 2012
JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

RANDALL JEFFREY L                                                PETITIONER

V.                                              CASE NO.: 11-C-93-OA

SEP 14 2012
CASSELL & CREWE PC

ADRIAN HOKE, Warden,
Huttonsville Correctional Center,                               RESPONDENT.

## ORDER

On the 26th day of March, 2012, this matter came before the Court for a hearing on the Petitioner's Petition for Post-Conviction Habeas Corpus Relief, brought pursuant to the provisions of Chapter 53, Article 4A, of the West Virginia Code, as amended, which was filed *pro se*, and on the Petitioner's Amended Petition for Writ of Habeas Corpus with exhibit filed on his behalf by his court-appointed counsel. The Petitioner appeared in person and by counsel, Paul Cassell, Esq. and Melissa D. Davis, Esq. appeared on behalf of the Respondent.[1]

The Petitioner is seeking post-conviction habeas corpus relief from his March 9, 2001 indeterminate sentences of not less than fifteen (15) nor more than thirty-five (35) years for one count of Sexual Assault – First Degree, and of not less than ten (10) nor more than twenty (20) years for three counts of Sexual Abuse by a Custodian for which he was convicted by a jury of his peers. The Petitioner was sentenced to serve fifteen (15) to thirty-five (35) years in the State penitentiary, however, the ten (10) to twenty (20) year sentences were suspended for five years' probation upon his release from prison by the Honorable Judge John R. Frazier.

## I.     FACTUAL/PROCEDURAL HISTORY

### A.     The Indictment – Case No. 00-FE-174

By a True Bill returned by the June 2000 term of the Mercer County Grand Jury,

---

[1] Melissa D. Davis, Esq. was substituted as counsel for the Respondent by Order of Appointment of Special Prosecutor entered on April 29, 2011.

1

the Petitioner, Randall Jeffrey L    , was indicted for five counts of Sexual Assault – First Degree and for eleven counts of Sexual Abuse by a Custodian. Five counts of the Sexual Abuse by a Custodian were dismissed by the State during a pretrial hearing. The victim was the Petitioner's step-daughter. After a jury trial, the Petitioner was convicted of one count of Sexual Assault – First Degree and three counts of Sexual Abuse by a Custodian, with the remaining counts resulting in acquittal.

## B.    Appeal to the West Virginia Supreme Court of Appeals – Denied

On September 10, 2001, the Petitioner, by counsel, R. Thomas Czarnik, Esq., presented the West Virginia Supreme Court of Appeals with the Petitioner's Petition for Appeal from his convictions rendered against him in the Mercer County Circuit Court. The Petitioner's petition for appeal was based upon the following grounds:

1. Whether the Petitioner's convictions of sexual abuse by a custodian can be supported when "not guilty" verdicts were returned by the jury on acts which supported the allegations of abuse.

2. The trial court erred by refusing a defense "uncorroborated testimony" instruction.

3. The Petitioner was denied his right to a fair trial because the trial court erred in not granting his motion to dismiss Counts 62, 63, 66, 67, 70, 71, 74, 75, 78, 79, 82, 83, 84, 86, 87, 88, 90, 91, 92, 94, 95, 96, 98, 99, 100, 102, 103, 104, 106, 107, 108, 110, 111, 112, 114, 115, 116, 118, 119 and 120.

By order entered on November 27, 2001, the West Virginia Supreme Court of Appeals refused the Petition for Appeal.

## C.    Mercer County Circuit Court Civil Action No. 02-C-611-F

On September 18, 2002, the Petitioner, by counsel, William C. Forbes, Esq., filed his

2

initial petition for writ of habeas corpus. The Petitioner, by counsel, asserted two grounds in support of his petition: Insufficiency of the evidence and ineffective assistance of counsel. All other available grounds were waived.

Most of the Petitioner's complaint centered on sub-grounds of ineffective assistance of trial counsel: (1) Counsel failed to apprise the Petitioner of his rights and prepare him for trial; (2) Counsel failed to investigate and prepare the Petitioner's case, to-wit: Counsel failed to prepare or review the testimony of witnesses prior to calling them at trial; counsel failed to use a private investigator to investigate possible defenses; counsel did not adequately research the legal issues involved in the Petitioner's trial; counsel failed to subpoena witnesses and evidence that would have benefitted the Petitioner; and counsel failed to file motions in limine or research the pertinent evidentiary issues necessary to prevent prejudicial evidence from in at trial; (3) Counsel elicited prejudicial evidence at trial, including other crimes and bad acts; (4) Counsel failed to object to prejudicial evidence from State witnesses and failed to request a cautionary instruction regarding the same including: the Petitioner had showed the victim pornography when she was ten; the Petitioner had showed the victim a video of the Petitioner and the victim's mother having sex; the Petitioner had threatened to burn down the house with the victim and her mother inside; the Petitioner had filmed himself and the victim engaging in sexual activity; the Petitioner's phone service was discontinued due to nonpayment; and the Petitioner owned an illegal satellite system.

On November 19, 2002, a response was filed on behalf of the Respondent by then Prosecuting Attorney William J. Sadler[2], generally denying all the Petitioner's allegations and asserting the Petition lacked merit.

An evidentiary hearing on the Petitioner's habeas petition was held on April 11, 2003.

---

[2] William J. Sadler is currently a judge for Mercer County, West Virginia, Ninth Judicial Circuit.

The petition for habeas relief was denied by order entered on January 6, 2004, wherein the trial court noted that the evidence was sufficient to lead a rational trier of fact to find the Petitioner guilty of Sexual Assault – First Degree and Sexual Abuse by a Custodian. With regard to the Petitioner's claim that his trial counsel did not advise him of his rights and prepare him for trial, the trial court found that such facts alone did not illustrate that his counsel failed to prepare the Petitioner for trial. Trial counsel has discretion as to how he is to prepare for trial, and does not rise to the level of ineffective assistance of counsel. The trial court noted that there was nothing in the trial record that substantiated the Petitioner's claim that his trial counsel failed to investigate, use a private investigator, preparing for trial, etc. because the Petitioner was merely assuming what his counsel did or did not do in preparation for trial. The trial court found that the Petitioner's trial counsel was reasonable in his preparation for trial and further pointed out that the Petitioner was acquitted of eighteen counts.

Further, the trial court found that the lack of objections to some of the State's witnesses' testimonies was not unreasonable or unprofessional, and that same was attributed to trial strategy. The trial court also found that the Petitioner's trial counsel's statements or eliciting testimony of prejudicial evidence was akin to damage control and also attributed same to trial strategy. With regard to the Petitioner's claims of his trial counsels' failure to request cautionary jury instructions, the trial court found that no facts were alleged to support this ground and that requests of such instructions is within discretion of the trial counsel, and as such the trial court found no evidence of ineffective assistance of counsel on this ground. Finally, the trial court found that none of the Petitioner's allegations of ineffective assistance of counsel were substantiated and further, that any such errors would not have in reasonable probability, had any effect on the outcome of the trial.

4

On March 12, 2004, the Petitioner, by counsel, William C. Forbes, Esq., filed an appeal to the Supreme Court of Appeals of Judge John R. Frazier's order denying the initial habeas petition. The Petitioner cited the following grounds for his appeal of his habeas petition: (1) that the trial court erred in denying his petition for habeas relief where the evidence was insufficient as a matter of law to convict him where there had been no physical evidence or any evidence corroborating the testimonies of the victim and her mother; (2) that the trial court erred in denying the Petitioner's claim that the introduction of prejudicial evidence such as his KKK tattoo, possession of pornography, failure to pay child support, and other bad acts so inflamed the jury that it was unable to be a rational trier of fact and thus impossible for the Petitioner to receive a fair trial by a jury of his peers; and (3) that the trial court erred by denying the habeas claim of ineffective assistance of trial counsel.[3] The West Virginia Supreme Court of Appeals refused the appeal by order entered on May 13, 2004.[4]

## II. THE INSTANT CASE: MERCER COUNTY CIVIL ACTION NO. 11-C-93-OA

On January 27, 2011, the Petitioner filed his *pro se* Petition for habeas relief. Counsel was appointed by order dated March 1, 2011, who subsequently on behalf of the Petitioner, filed an Amended Petition for Writ of Habeas Corpus on July 29, 2011. The sole ground before this Court is ineffective assistance of habeas counsel, with several itemized instances of same.

---

[3] Again, the Petitioner, by counsel, listed all the sub-grounds of his claims of ineffective assistance of trial counsel.
[4] On June 8, 2004, the Petitioner, by counsel, William C. Forbes, Esq., filed a Petition for Writ of Habeas Corpus in the United States District Court for the Southern District of West Virginia (civil case no. 1:04-CV-00572). The Petition had been dismissed on motion for summary judgment filed on behalf of the respondent therein by order entered on August 26, 2008.

5

### III. OVERVIEW OF PLEADINGS

#### The Petitioner's Amended Petition for Writ of Habeas Corpus

The Petitioner presented several sub-grounds of ineffective assistance of habeas counsel:

1. Failure to address trial counsel's ineffectiveness concerning tattoo and scar evidence

The Petitioner has a tattoo on his penis, depicting an "arrow" or "black V" that was identified by the victim. Trial counsel elicited this also during his direct examination of the Petitioner. The Petitioner also bears hernia scars that were not mentioned by the victim. During the trial, the Petitioner's counsel attempted to discredit victim's identification because she failed to mention the obvious hernia scars. Although the Petitioner testified about those scars, the defense was unable to show a photo of same because the photograph quality was very poor. However, the trial court did attempt to accommodate the Petitioner by allowing such evidence in trial.

2. Failure to address trial counsel's ineffectiveness concerning the custody battle as a reason for the victim to lie about the sexual abuse allegations.

Trial counsel had confused the dates of the custody disputes and then tried to use the visitation issue as a reason for the victim to misrepresent the allegations. At trial, the record showed that the Petitioner had gone through a contentious divorce from the victim's mother. The post-divorce relationship between the Petitioner and his ex-wife was very strained, and the children of the broken union bore the brunt of the adults' hostilities. The victim admitted to being tired of "being in the middle" of the ongoing custody and visitation dispute and vowed to "put a stop to it." Shortly after involving law enforcement in a threat to hold his ex-wife in

6

contempt for impairing his visitation rights with his son, the victim accused the Petitioner for molesting her which lead up to the underlying criminal proceeding.

3.     Failure to address trial counsel's ineffectiveness regarding improper flight evidence

The prosecuting attorney elicited evidence that the Petitioner left West Virginia to South Carolina after the police investigation into the victim's accusations began. The defense provided another reason for leaving this jurisdiction: the Petitioner testified that he had a job interview in South Carolina, and that he returned to West Virginia without having to be extradited back to the State upon learning that an arrest warrant had been issued. The Petitioner contends that this evidence should not have been admitted and trial counsel failed to request a cautionary instruction after it was admitted.

The Petitioner lists several other items of his prior trial attorney's failures that his prior habeas counsel failed to address in his first habeas proceeding: Habeas counsel failed to address trial counsel's failure to show the Petitioner lacked a lustful disposition towards minors, because trial counsel brought the Petitioner's character into play. Habeas counsel also failed to address potential juror bias; one juror knew the Petitioner's brother, who testified, and who allegedly disliked the Petitioner's brother. The Petitioner's competency was not addressed at trial either, as he has a low I.Q. and suffers from memory problems. During the initial habeas proceeding, habeas counsel also did not discuss the lack of evidence showing that the Petitioner allegedly broke into church, which had been mentioned during the trial. Lastly, the Petitioner alleges that his previous habeas counsel failed to explain the *Losh* checklist to him, and to explain what grounds he was asserting and which grounds he was forever waiving and what the consequences would be.

7

The Respondent basically denies all the Petitioner's claims herein and states that none of the claims rise to any ineffectiveness of habeas counsel and accordingly, the Petition should be denied. Almost all of the Petitioner's complaints had been dealt with previously, in trial, on direct appeal, in the prior habeas proceeding, and again on direct appeal of the denial order issued in the previous habeas proceeding. The Respondent contends that there is nothing new for the Petitioner to complain about, and has not carried his burden of proof entitling him to a writ.

## IV.    LAW GOVERNING HABEAS CORPUS

*Habeas Corpus* is "a suit wherein probable cause therefore being shown, a writ is issued which challenges the right of one to hold another in custody or restraint." Syl. Pt. 1, *State ex rel. Crupe v. Yardley*, 213 W. Va. 335 (2003).[5] "The sole issue presented in a habeas corpus proceeding by a prisoner is whether he is restrained of his liberty by due process of law." *Id.* at Syl. Pt. 2. "A habeas corpus petition is not a substitute for a writ of error[6] in that ordinary trial error not involving constitutional violations will not be reviewed." *Id.* at Syl. Pt. 3.

In *State ex re. McCabe v. Seifert*, the West Virginia Supreme Court of Appeals delineated the circumstances under which a post-conviction habeas corpus hearing is available, as follows:

> [1] Any person convicted of a crime and [2] incarcerated under sentence of imprisonment therefore who contends [3] that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or [4] that the court was without jurisdiction to impose the sentence, or [5] that the sentence exceeds the maximum authorized by law, or [6] that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common-law or any statutory provision of this State, may, without paying a filing fee, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal

---

[5] See also, Syl. Pt. 4, *Click v. Click*, 98 W. Va. 419 (1925).

[6] A writ of error is a writ issued by an appellate court to the court of record where a case was tried, requiring that the record of the trial be sent to the appellate court for examination of alleged errors. Dictionary.com Unabridged (v 1.1) Random House, Inc. www.hittp://dictionary.reference.com/browse/writ of error>.

imprisonment, correction of the sentence, the setting aside of the plea, conviction and sentence, or other relief[.]

220 W. Va. 79 (2006); W. Va. Code § 53-4A-1(a).

Our post-conviction habeas corpus statute, W. Va. Code § 53-4A-1 *et seq.*, "clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding during which he must raise all grounds for relief which are known to him or which he could, with reasonable diligence, discover." Syl. Pt. 1, *Gibson v. Dale*, 173 W. Va. 681 (1984).[7]

"A prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however an applicant may still petition the court on the following grounds: (1) ineffective assistance of counsel at the omnibus habeas corpus hearing; (2) newly discovered evidence; (3) or, a change in the law, favorable to the applicant, which may be applied retroactively." Syl. Pt. 4, *Losh v. McKenzie.*[8]

### Standard/Burden of Proof

A habeas corpus proceeding is civil in nature. "The general standard of proof in civil cases is preponderance of the evidence." *Sharon B.W. v. George B.W.*, 203 W. Va. 300 (1998).

"Whether denying or granting a petition for a writ of habeas corpus, the circuit court must make adequate findings of facts and conclusions of law relating to each contention advanced by

---

[7] See also, *Losh v. McKenzie*, infra.

[8] On June 16, 2006, the West Virginia Supreme Court of Appeals held that a fourth (4th) ground for habeas relief may exist in cases involving testimony regarding serology evidence. Summarizing, the Supreme Court of Appeals held as follows:

A prisoner who was convicted between 1979 and 1999 and against whom a West Virginia State Police Crime serologist, other than a serologist previously found to have engaged in intentional misconduct, offered evidence may bring a petition for a writ of habeas corpus based on the serology evidence even if the prisoner brought a prior habeas corpus challenge to the same serology evidence and the challenge was finally adjudicated..

*In re Renewed Investigation of State Police Crime Laboratory, Serology Div.*, 219 W. Va. 408 (2006).

9

the petitioner, and to state the grounds upon which the matter was determined." *Coleman v. Painter*, 215 W. Va. 592 (2004).

## V.  TESTIMONIAL EVIDENCE

### The Omnibus Hearing

The arguments during the hearing, and the testimonial evidence elicited from examination and cross-examination of the witnesses are discussed below. During the omnibus evidentiary hearing, the Petitioner focused on several major claims of ineffective assistance of habeas counsel.

The Petitioner called R      W      L      , his brother, to testify. Mr. L recalled the "nasty" divorce between the Petitioner and the victim's mother as well as the difficulties the Petitioner encountered when exercising his visitation rights with his son with his ex-wife. He further testified that he recalled the charges came about shortly after the difficulties the Petitioner had with respect to visitation.

The next witness for the Petitioner was Dr      A      P      , the Petitioner's sister. She too recalled the contentious post-divorce relationship between the Petitioner and the victim's mother. Ms. P      testified that the two always argued during the exchanges for visitation and that the Petitioner's ex-wife did not want the Petitioner visiting with their son and often refused visitation by not having the child present for the exchanges. She further testified that she did speak with the Petitioner's prior habeas counsel, Mr. Forbes, about these issues, although not in great detail.

Ms. Ja      S      testified as well, who had dated the Petitioner just before the charges were filed against him. She stated that their break-up was amicable, mainly due to the Petitioner not wanting to put her through the problems surrounding his criminal proceeding. She also

10

testified that she had a young daughter at the time, about ten or eleven years old, and that she never saw inappropriate behavior exhibited by the Petitioner toward her daughter. She also believed it was not in the Petitioner's character to molest a child. She testified that she was not approached by either trial counsel or by habeas counsel concerning the Petitioner's lack of lustful disposition towards children. However, on cross examination, she admitted not being aware of his previous habeas proceeding.

The Petitioner testified that he had only one meeting with his habeas counsel. Further, he testified that his habeas counsel did not mention the flight evidence during the prior omnibus hearing. Further, at no time was the spider tattoo that the Petitioner sports on the head of his penis addressed. Further, the Petitioner testified that Mr. Forbes did not address the victim's mistaken location of the "arrow" tattoo on his penis; the tattoo is on the front side, middle way down the shaft. The Petitioner has very large, approximately eight-inch scars on both sides of his groin area from two prior hernia surgeries. At the time of the alleged accusations, those scars would have been raised and discolored, although the victim's testimony did not reference such obvious scarring.

The Petitioner also testified that his step-brother, K    , P    , who testified on his behalf on the first day of the trial told him that there was a juror who hated him, but this also was not addressed during the previous omnibus hearing and further was not addressed during or after the trial.[9]

Further undeveloped during the previous habeas hearing was the issue concerning the custody and visitation dispute. The Petitioner argued that his habeas counsel did not address his

---

[9] At the close of this instant omnibus hearing, the Court permitted the Petitioner additional time to brief the limited issue of juror bias and scheduled another evidentiary hearing on that issue alone for September 5, 2012. However, the Petitioner did not brief the issue, and the Court received a letter from counsel filed on August 31, 2012 that the Petitioner had no support for the juror bias issue after having conducted a thorough investigation into the matter. Accordingly, the supplemental omnibus hearing was cancelled as the matters were ripe for decision.

11

trial counsel's failure to develop the victim's possible motive for falsely accusing the Petitioner of molestation. The flight evidence only served to hurt the Petitioner's credibility, moreover, although the Petitioner testified on his own behalf, his lack of memory was not explored, and habeas counsel did not address this issue during the omnibus hearing. The Petitioner testified that his prior habeas counsel, who had been retained, had a strategy concerning the habeas proceeding, although the Petitioner was unsure of the legal consequences at the time. Finally, the Petitioner testified that he had no additional grounds to raise for the present habeas proceeding and that the matters raised herein were what he agreed to raise with his appointed habeas counsel.

The parties herein advised the Court that they were not going to call Mr. Forbes as a witness in this habeas proceeding.

## VI. DISCUSSION

The Court, having reviewed and considered the Petition, the briefs filed on behalf of the parties, the court files, the transcripts of the trial and prior habeas proceedings, the arguments of counsel, the testimonies from the omnibus hearing, and the pertinent legal authorities, does hereby **DENY** the Petitioner's Petition for habeas corpus relief. In support of this decision, the Court makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**:

### A. The Scar and Tattoo Evidence

The record below indicates that the scar and tattoo evidence was indeed fleshed out adequately during the trial. The victim, her mother and the Petitioner himself testified concerning the tattoo on the Petitioner's penis. Notably, however, at no time was there any mention of the alleged spider tattoo on the penis head by any witness, including the Petitioner himself. Additionally, the record below indicates no discussion concerning the location of the

12

arrow tattoo. "A court of record speaks only by its record is the general rule." *State v. Nuckols*, 152 W. Va. 736 (1968). The trial record is silent concerning the alleged spider tattoo. The trial record is also silent concerning the arrow tattoo's location. The Petitioner testified during his first habeas hearing that the victim did not testify as to the location of the tattoo, just that it was on his penis, but not exactly where on his penis. Of more importance here, is that the Petitioner did not even mention his spider tattoo during the initial omnibus hearing or during the criminal trial.

The Petitioner's hernia scars were addressed during both the trial and during the first omnibus hearing. The Petitioner testified that his trial counsel withdrew his request to show the jury a photograph of his hernia scars, as the photo quality was so poor. He did testify about his scars in the trial below as well as during his first habeas proceeding, however, the Petitioner believed photographic evidence would have helped his defense. Because both the scar and tattoo evidence had been addressed during both the trial and initial habeas proceeding, this Court cannot find any evidence in support of the Petitioner's claim of ineffective assistance of habeas counsel in this particular instance. Accordingly, the Court **FINDS** and **CONCLUDES** this ground without merit.

**B. Custody and Visitation Issues**

The trial record indicated that the contentious custody and visitation issues were addressed by the Petitioner, his witnesses, including L᠄ ᠄ A᠄ P᠄ ᠄ and R᠄ W᠄ L᠄ ᠄ who also testified on the Petitioner's behalf in this proceeding. Additionally, the victim and her mother testified about the custody and visitation issues during the trial. Of importance here, the Petitioner himself testified during his trial about the contentious custody and visitation issues between himself and his ex-wife. The trial record indicated some confusion of dates on the parts

13

of nearly all witnesses involved, including the Petitioner, however, the Petitioner's testimony was emphatic that the accusations came about shortly after his son indicated his preference to reside with him. Moreover, Ms. P⸻ and Mr. L⸻ testified during the initial habeas proceeding about the Petitioner's ex-wife refusing his visitation with his son. Mr. Forbes also called J⸻ P⸻, Ms. P⸻'s husband, who testified during the initial habeas proceeding that he could have provided testimony concerning the custody dispute, however, trial counsel did not call him as a witness.[10] Accordingly, the Court **FINDS** and **CONCLUDES** the Petitioner's claim of ineffective assistance of habeas counsel to address the custody and visitation issues to be without merit.

## C.  Flight Evidence

During the trial, the State introduced the evidence of the Petitioner leaving West Virginia to South Carolina as evidence of the Petitioner's flight, however, the Petitioner testified that he had travelled to South Carolina for a job interview that had been planned before he was aware of the criminal charges. Although the flight evidence was not mentioned during the initial habeas proceeding, Mr. Forbes did retain a legal expert for his opinion of trial counsel's overall effectiveness: Mr. Peter C. Brown, Esq., who had practiced law for about forty years in Kanawha County. Mr. Brown had worked in the Kanawha County Prosecutor's Office for about thirty years as an assistant prosecuting attorney, handling over one hundred felony matters, including cases similar to the Petitioner's. Mr. Brown also taught classes at the Prosecutor's Institute, at the West Virginia State Police Academy and has taught classes to Conservation

---

[10] The evidence elicited during the initial habeas proceeding indicated that Mr. P⸻ would not have had personal knowledge of the contentious visitation exchanges. Transcript of Habeas Corpus proceeding, April 11, 2003, page 10, lines 9 – 18.

14

Officers and Charleston City Police officers. He was qualified as an expert in criminal trial matters.[11]

Mr. Brown reviewed the trial transcript and ultimately rendered an opinion that trial counsel was ineffective and there was a reasonable probability that the outcome of the trial could have been different. Mr. Brown went over several instances of trial counsel's failings to the Petitioner, many of which he opined had a major impact on the outcome of the trial. In this Court's opinion, the flight evidence was the least of the Petitioner's worries, however, because Mr. Forbes addressed the majority of the alleged prejudicial evidence that came out during the trial. Therefore, even if for habeas counsel's error in failing to address the flight evidence issue at the initial omnibus hearing, the outcome of the habeas proceeding would not have been different, thus the Court **FINDS** and **CONCLUDES** that the Petitioner failed to prove this instance of ineffective assistance of habeas counsel by a preponderance of the evidence.

**D. Other Instances of Ineffective Habeas Counsel**

Habeas counsel addressed the matter of the alleged church break-in; trial counsel addressed this matter head-on in an attempt at damage control: to provide the jury with another explanation for why the State believed the Petitioner had broken into the church. Mr. Forbes' legal expert, Mr. Brown, did address this issue and further opined that the issue was just another instance of the Petitioner's ineffective trial counsel.[12]

With respect to the lack of lustful disposition evidence introduced at trial, Mr. Brown did offer an opinion that perhaps trial counsel's addressing other bad acts or crimes was a method of

---

[11] Id., *passim.*
[12] Id., page 61, lines 21 – 24; page 62, lines 1 – 24.

15

showing that the Petitioner lacked a lustful disposition towards children, although he ultimately believed that was not a strategy a reasonable, competent attorney would have done.[13]

The Petitioner has alleged that his habeas counsel failed to address his competency, specifically, that the Petitioner had a low I.Q. and was suffering memory issues. There is no record of this from either the pre-trial or the trial transcript or in the habeas proceedings. Further, this Court is hard-pressed to find that the Petitioner had been suffering memory issues during the trial, as his trial testimony appears to be coherent and detail-oriented as to the timeline of events. Further, during his initial omnibus proceeding, the Petitioner never testified that he had I.Q. or memory issues, and upon direct questioning by the court concerning his ability to understand the proceedings, the Petitioner clearly indicated that he did.

The Petitioner contends that his habeas counsel also failed to introduce evidence of juror bias. Interestingly, this matter was never raised on appeal or addressed during the trial or during post-conviction hearings. Therefore, it is not surprising that the Petitioner's first habeas counsel did address same; indeed, the Petitioner's current habeas counsel was given leave by this Court to further explore that limited issue, but after a thorough investigation, Mr. Cassell advised this Court that the investigation bore no fruit.

Finally, the Petitioner argued that his first habeas counsel failed to explain the *Losh* checklist and the meaning of the grounds asserted or waived therein. This Court finds that this ground lacks merit: the transcript of the habeas proceeding clearly shows that the court went over this with the Petitioner and that the Petitioner testified that he understood the importance of waiving and asserting certain grounds in his petition for writ of habeas corpus.[14]

---

[13] Id., page 50, lines 10 – 20.
[14] Id., page 65, lines 9 – 17; page 87, lines 9 – 23.

16

Accordingly, the Court **FINDS** and **CONCLUDES** that the Petitioner has failed to prove these claims of ineffective assistance of habeas counsel by a preponderance of the evidence.

The Court further **FINDS** that the above grounds as contained in the Petitioner's *Petition* and/or presented during the omnibus hearing have been fully and finally litigated and adjudicated in this proceeding with the Court concluding that they are without merit; that they fail to rise to the level of a constitutional claim recognizable in habeas; or that the Petitioner failed to meet his burden of proof. Further, any issues that should have been known, and were raised, are now considered waived.

## VII.   RULING

**WHEREFORE,** it is hereby **ORDERED, ADJUDGED,** and **DECREED** by this Court that the *Petition for Writ of Habeas Corpus* is **DENIED.**

The Petitioner is hereby advised of his right to appeal this Order to the West Virginia Supreme Court of Appeals. The Petitioner is advised that if he cannot afford to employ and attorney to handle his appeal, the Court will appoint him counsel for said purposes. This is a final order.

The Clerk is directed to forward a copy of this Order to the Petitioner at the Denmar Correctional Center, HC 64, Box 125, Hillsboro, WV 24946; to Paul Cassell, Esq., Counsel for the Petitioner; and to Melissa Davis, Esq., Counsel for the Respondent.

This matter, having accomplished the purpose for which it was instituted, it is hereby ordered **DISMISSED** and **OMITTED** from the docket of this Court.

**ENTERED** this the ___11th___ day of ___Sept___, 2012.

_____
**OMAR J. ABOULHOSN, CHIEF JUDGE**

17